DEATH *et al. v.* BANK OF PITTSBURG *et al.*

Where in a cause in chancery against a foreign corporation, for an injunction to restrain proceedings at law, commenced by the defendants in that suit, service was made upon one of the attorneys of the corporation; and there being no appearance, the bill was taken *pro confesso*, and a decree rendered perpetually enjoining the corporation, her agents and attorneys, from collecting a portion of the debt; *Held,* That the service upon the attorney, was not such service upon the corporation, as gave the court jurisdiction to order a perpetual injunction.

*Appeal from the Lee District Court.*

In 1848, the Bank of Pittsburg, being a foreign corporation, obtained a judgment in the Lee District Court, against the complainants in this bill. Execution issued on this judgment, and certain lands were sold thereon to Grimes & Starr, the attorneys of the bank. Before the sale, however, the complainants obtained an injunction to restrain the bank, her agents and attorneys, from collecting some

$578.00 of said judgment.   Notwithstanding this, the said lands were bought in for an amount sufficient to satisfy the judgment.   The writ of injunction, which also contained a notice to appear and answer, was served on James W. Grimes, one of the attorneys of the bank, and this was the only service made.   On the return of the writ at the next term, this service was treated as service on the bank, and there being no appearance, the petition was taken *pro confesso*, and a decree entered perpetually enjoining the bank, her agents or attorneys, from collecting the said $578.00.   Afterwards, the time for the redemption of this land being about to expire, the complainants filed this bill, setting forth the above facts, tendering, and depositing with the proper officer, a sufficient sum to redeem the lands so sold, deducting the $578.00 and interest thereon, and praying that the sheriff be enjoined from making a deed under said sale.   To this bill, the bank  appears and answers, denying its equity, admitting the previous proceedings, and that Grimes & Starr were her attorneys in procuring and collecting said judgment; but denying all notice of said previous injunction proceedings, or that she ever had service of notice, so as to be made a party.   To this answer, there was what the parties call and treat as a demurrer, which was overruled, and from this order the complainants appeal.

*Samuel F. Miller*, for the appellants.

*Henry W. Starr*, for the appellees.

WRIGHT, C. J.—The question raised by the demurrer, and presented by the argument, for our determination, is this:   Was the service upon Grimes, one of the attorneys of the bank, in procuring and collecting her judgment, sufficient to give the court jurisdiction of the person in the first injunction proceedings, so as to authorize the rendition of the decree, and to conclude the parties thereto ?

In favor of the answer, it is claimed, that the duties of the attorney ceased so soon as the judgment had been obtained;

and that after that time, Grimes no longer occupied that relation to the bank; and we are referred to the case of *Jackson* v. *Bartlett*, 8 Johns. 361, and other authorities, to sustain this position. Without referring to those authorities, we think it sufficient to say, that the answer expressly admits that Grimes and his partner, Starr, were the attorneys of the bank, not only to procure this judgment, but to collect it. At the time of this service, the judgment was not collected, and his duties had not therefore ceased. But this court held, in the case of *McCarver* v. *Nealey*, 1 G. Greene, 360, that the attorney's duties did not cease on the rendition of the judgment. And in all cases where claims are placed in the hands of attorneys to collect, without restriction, this rule commends itself to our minds as just and proper. As to the extent of his power, and how far his client may be bound by the relation, is another question, and one that does not arise here, except to the extent which we shall now proceed to notice.

It is conceded, that in ordinary actions or proceedings, such service would not be sufficient to give the court jurisdiction. Ordinarily, there must be a personal service, and the party thus be given a full opportunity to have his day in court, before he would be bound. The complainants claim, however, that the injunction proceedings to stay a judgment, is not an original writ, and that, therefore, this general rule does not apply. In this, we think, they are correct. The bill, it is true, is in the nature of an original one; but the matter which is the foundation of the litigation, is already before the court; and this is but a cross litigation, in order to controvert, suspend, avoid, or finally enjoin, such proceeding on the judgment which may have been rendered. It is but an order issuing from the equity side of the court, to stay proceedings on the common law side, on the ground that it would be unjust, and against equity and good conscience, to enforce it. Cooper, Eq. Pl. 44, 45.

Treating it in this light, the English chancery practice, where the party seeking to enforce the judgment at law, is

Death et al. v. Bank of Pittsburg et al.

a non-resident, or beyond the jurisdiction of the court, provides that service upon the solicitor prosecuting the judgment, shall be service on the absent judgment creditor, or that such substituted service may be ordered, upon motion. This same practice has been adopted by our federal courts, those tribunals having conformed to most of the remedial part of that practice, by the interpretation given to the federal judiciary act.    The reason of the practice, as we understand it, is this: The plaintiff at law seeks to enforce a demand, which is against equity and good conscience.    The defendant cannot be heard at law, but he makes his equity evident by his bill, properly verified.    The plaintiff, however, is beyond the reach of judicial process; and, in such cases, the service on the attorney prosecuting the claim, is substituted, that the defendant's equities may be heard, and injustice prevented.    Unless this was allowed, the non-resident plaintiff might invoke the aid of the common law courts, and the defendant be left remediless, however strong his equitable rights.    2 Mad. Chan. 198; Dan. Chan. 518; Eden on Inj. 78, 78-1, 78-2, and note; 2 Wash. C. C. 465; 4 Ib. 175, 370, 472.

We think, however, that the reason of the rule did not obtain, under the statute in force at the time this writ was served, and that, therefore, the rule itself ceased.    Under our practice, then as well as now, as a general thing, the injunction is ordered on an *ex parte* application.    When issued and served on the officer having the execution, it operates to stay the same.    In this method, the injustice which was about to be perpetrated, is suspended; and if the plaintiff at law wishes to proceed with his collection, he can appear, and on proper showing, have the injunction dissolved.    And further, the complainant, after such suspension, in order to prosecute, as is his duty, his claim to a perpetual injunction, has a plain method, by which to bring the non-resident into court.    By the Rev. Stat. 108, §§ 9 and 12, a non-resident defendant in chancery proceedings, might be notified by publication in some newspaper, and when thus notified, as well as when served personally, he was treated as in court, and

the court could, by rule, establish the time when he should be required to answer.

There was, then, a method of bringing the party into court, without resorting to the practice of ordering substituted service. This method, we think, meets the spirit, and obviates the necessity, of the English practice. This is the view taken by the courts of New York, under a similar statute, with regard to publication of notice; and we think it in accordance with correct practice, and the general rule as to service and notice. 1 Barb. Chan. Prac. 53.

So regarding, we think the court correctly overruled the demurrer. Service upon the attorney, was not such service upon the party, as to give the court jurisdiction to order a perpetual injunction.

Order overruling the demurrer, affirmed.